# UNITED STATES DISTRICT COURT

for the

_____ District of _____

_____ Division

|  |  |
|---|---|
| _____ | Case No. _____ |
|  | *(to be filled in by the Clerk's Office)* |
| *Plaintiff(s)* | |
| *(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)* | Jury Trial: *(check one)* ❏ Yes ❏ No |
| **-v-** | |
| _____ | |
| *Defendant(s)* | |
| *(Write the full name of each defendant who is being sued.  If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)* | |

## COMPLAINT FOR A CIVIL CASE ALLEGING BREACH OF CONTRACT
### (28 U.S.C. § 1332; Diversity of Citizenship)

## I. The Parties to This Complaint

### A. The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint.  Attach additional pages if needed.

| Name | _____ |
|---|---|
| Street Address | _____ |
| City and County | _____ |
| State and Zip Code | _____ |
| Telephone Number | _____ |
| E-mail Address | _____ |

### B. The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation.  For an individual defendant, include the person's job or title *(if known)*.  Attach additional pages if needed.

Pro Se 4 (Rev. 12/16) Complaint for a Civil Case Alleging Breach of Contract

Defendant No. 1

    Name

    Job or Title *(if known)*

    Street Address

    City and County

    State and Zip Code

    Telephone Number

    E-mail Address *(if known)*

Defendant No. 2

    Name

    Job or Title *(if known)*

    Street Address

    City and County

    State and Zip Code

    Telephone Number

    E-mail Address *(if known)*

Defendant No. 3

    Name

    Job or Title *(if known)*

    Street Address

    City and County

    State and Zip Code

    Telephone Number

    E-mail Address *(if known)*

Defendant No. 4

    Name

    Job or Title *(if known)*

    Street Address

    City and County

    State and Zip Code

    Telephone Number

    E-mail Address *(if known)*

## II.     Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power).  Under 28 U.S.C. § 1332, federal courts may hear cases in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000.  In that kind of case, called a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.  Explain how these jurisdictional requirements have been met.

### A.     The Plaintiff(s)

1.     If the plaintiff is an individual

The plaintiff, *(name)* _____ , is a citizen of the State of *(name)* _____ .

2.     If the plaintiff is a corporation

The plaintiff, *(name)* _____ , is incorporated under the laws of the State of *(name)* _____ , and has its principal place of business in the State of *(name)* _____ .

*(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

### B.     The Defendant(s)

1.     If the defendant is an individual

The defendant, *(name)* _____ , is a citizen of the State of *(name)* _____ .  Or is a citizen of *(foreign nation)* _____ .

2.     If the defendant is a corporation

The defendant, *(name)* _____ , is incorporated under the laws of the State of *(name)* _____ , and has its principal place of business in the State of *(name)* _____ .

Or is incorporated under the laws of *(foreign nation)* _____ , and has its principal place of business in *(name)* _____ .

*(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

### C.     The Amount in Controversy

The amount in controversy–the amount the plaintiff claims the defendant owes or the amount at stake–is more than $75,000, not counting interest and costs of court, because *(explain)*:

Pro Se 4 (Rev. 12/16) Complaint for a Civil Case Alleging Breach of Contract

## III.   Statement of Claim

Write a short and plain statement of the claim.  Do not make legal arguments.  State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought.  State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct.  If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph.  Attach additional pages if needed.

The plaintiff, *(name)* _____ , and the defendant,

*(name)* _____ , made an agreement or contract on

*(date)* _____ .  The agreement or contract was *(oral or written)* _____ .  Under that

agreement or contract, the parties were required to *(specify what the agreement or contract required each party to do)*

_____

The defendant failed to comply because *(specify what the defendant did or failed to do that failed to comply with what the agreement or contract required)*

_____

The plaintiff has complied with the plaintiff's obligations under the contract.

## IV.   Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order.  Do not make legal arguments.  Include any basis for claiming that the wrongs alleged are continuing at the present time.  Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts.  Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

Pro Se 4 (Rev. 12/16) Complaint for a Civil Case Alleging Breach of Contract

## V.    Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.    For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: _____

Signature of Plaintiff    *Christopher Shephard*

Printed Name of Plaintiff _____

### B.    For Attorneys

Date of signing: _____

Signature of Attorney    _____
Printed Name of Attorney _____
Bar Number               _____
Name of Law Firm         _____
Street Address           _____
State and Zip Code        _____
Telephone Number         _____
E-mail Address           _____

## RELEASE AND SETTLEMENT AGREEMENT

**1. PARTIES.** The United States Agency for International Development (hereinafter "USAID" or "the Agency") and Christopher Shephard ("the Employee"), (collectively, "the Parties") hereby voluntarily enter into this Release and Settlement Agreement (hereinafter "Agreement"). This Agreement represents the full and final resolution of any and all matters related to the Employee's employment with the Agency.

**2. RIGHT TO REPRESENTATION.** The Employee and the Agency acknowledge that they fully understand and have had the opportunity to thoroughly review this Agreement. The Employee has had the opportunity (and is encouraged) to have an attorney review this Agreement prior to signing.

**3.** The **EMPLOYEE.** In consideration for the mutual promises contained herein:

    **a.**     **WAIVER AND RELEASE OF CLAIMS.** Waive, release, and forever discharge the Agency, its officers, agents, employees, and representatives (in their official and/or personal capacities) from any claims, demands, complaints, or causes of action, which Employee has or may have, arising from the Employee's employment with USAID, including, but not limited to, allegations raised in OCRD-008-19-F, the Agency's actions around the Employee's placement on a Performance Improvement Plan (PIP) and the Agency's termination of Employee's limited career employment in the Foreign Service upon failure of that PIP. Employee is requesting to be terminated for the reason of medical inability to perform the position of Foreign Service Officer/Foreign Service Career Candidate and understands he is waiving any claims, demands, complaints, or causes of action he may have regarding that termination, other than claims related to disability retirement. Employee further agrees to waive, release, and forever discharge any claims, demands, complaints, or causes of action that have or could have been raised prior to the effective date of this Agreement, arising out of or in connection with the Employee's employment with USAID and claims under any law, rule or regulation, including the Foreign Service Act of 1980, the Age Discrimination in Employment Act, 29 U.S.C. § 633a et seq., as amended by the Older Workers' Benefit Protection Act, the Rehabilitation Act of 1973, 29 U.S.C. § 791 et seq., as amended, and Title VII of the Civil Rights Act, 42 U.S.C. § 2000e et seq., as amended as applicable. This release includes, but is not limited to, a release of any right to administrative (e.g., FSGB appeal, FLRA, or EEO complaint process), judicial, or congressional relief, or any other type of relief, or of any claim to back pay, benefits, attorneys' fees and costs, or other type of compensation, except what is specifically set forth in Paragraph 4 below. However, by entering into this Agreement, Employee does not waive rights or claims that may arise after the effective date of this Agreement. Nothing in this paragraph shall prevent Employee from obtaining benefits to which he may be entitled following his separation, including health insurance,

**b.    MEDICAL INABILITY TERMINATION.** The Agency will revise the SF-50 documenting the termination of his time-limited Foreign Service appointment with USAID and the federal service, effective June 7, 2019, to reflect the Nature of Action Code 330, Authority Code ZLM. The remarks in box 45 will include a forwarding address and the comment: "Reason(s) for removal: Medical inability to perform," without further comment or further action codes. Employee waives any right to advanced notice of the medical inability termination or a decision letter documenting the termination. Employee understands that he is waiving his right to challenge the Agency's decision to terminate his employment with USAID and the federal service, effective June 7, 2019. If his disability retirement application is approved by the Department of State, Employee agrees that for a period of twelve years from June 7, 2019 he will not seek reinstatement or reappointment as a career FS° at USAID as provided for in 3 FAM 6167.2.

**c.    HOME LEAVE FORFEITURE.** Employee understands that he is forfeiting all home leave unused as of the effective date of this agreement.

**d.    DO NOT APPLY.** Employee agrees that he will not apply for or accept any position at USAID under any hiring mechanism or authority (including, but not limited to, a Civil Service Appointment, a Foreign Service Limited, Temporary or Career Appointment, or a contractor position such as, Personal Services Contractor, Institutional Contractor, STAR Appointment, Participating Agency Service Agreement, etc.) for twelve years from June 7, 2019. Employee understands that if he violates this provision, the Agency retains the right to terminate his employment or contract immediately or otherwise effectuate his removal from a position at USAID under any hiring authority or mechanism. Furthermore, if the Employee violates this provision, the Agency retains the right to remove from the Employee's official personnel folder the SF-50 noting his removal for medical inability to perform and replace it with an SF-50 coded 357/ZLK indicating termination for unsatisfactory performance.

**e.    HHE STORAGE.** The Agency agrees to store Employee's HHE (household effects), currently in shipment back to the United States Government storage facility in Hagerstown, Maryland, until March 9, 2020. Employee understands that he must take delivery of his HHE before March 9, 2020. No later than one month prior to the expiration of the storage, Employee must contact the Department of State to initiate arrangements for the delivery of his goods. In doing so he must meet all USG requirements, including, but not limited to (a) furnishing a copy of the USAID-

Shephard Agreement 2

amended travel authorization which will be issued no later than 30 business days after the date of this agreement, and (b) provide the Department of State with a domestic U.S. address for delivery.

Employee must take full possession of all items no later than March 9, 2020. Failure by Employee to cooperate timely with the State Department and USAID on facilitating the shipping, storage and delivery of his goods may result in additional costs for which the USG will invoice Employee. The Agency will cover all costs of storage, shipping and delivery to a domestic address through March 9, 2019. Any costs of storage, shipping, and/or delivery after March 9, 2020 are the responsibility of Employee. Employee understands that he needs to plan in advance with the State Department to ensure his goods can be shipped by March 9, 2020.

f.      **COMPLIANCE.** Employee agrees to comply with the terms of this agreement and provide timely information when requested by the Agency to effectuate the terms of this Agreement.

g.      **BANK ACCOUNT INFORMATION.** Within three (3) calendar days of the effective date of this Agreement, Employee will provide the Agency with a routing number and a checking account number for an account or accounts to which he wishes to receive the lump sum payments by completing a Phoenix Vendor Form and submitting it to USAID Attorney Sara Ryan via email at [saryan@usaid.gov](mailto:saryan@usaid.gov) in an encrypted e-mail or password protected email. Employee agrees to cooperate if the Agency needs additional information in order to process the lump sum payments and understands that if he does not provide the payment information within 3 business days of the effective date of this Agreement, the Agency's payment to him may be delayed.

4. **The AGENCY,** in consideration for the mutual promises contained herein, will:

a.      **REASON FOR TERMINATION.** The Agency will revise the SF-50 documenting the termination of his time-limited Foreign Service appointment with USAID and the federal service, effective June 7, 2019, to reflect the Nature of Action Code 330, Authority Code ZLM. The remarks in box 45 will include a forwarding address and the comment: "Reason(s) for removal: medical inability to perform," without further comment or additional action codes. The Agency will remove any reference to the Employee's termination for unacceptable performance including his 2019 Annual Performance Evaluation from his Official Personnel File (OPF). The Agency will mail a copy of the revised SF-50 to the Employee's address on file and email a copy to his attorney, Johnathan Lloyd, within 60 days, and mail a complete OPF to the Employee's address on file within 60 days of the effective date of this Agreement. The Agency will retain copies of the performance improvement plan and all documentation related to the Employee's failure of

Shephard Agreement 3

that performance improvement plan and subsequent termination of that performance plan pursuant to its records retention schedules. The Agency may rely on those documents in making internal hiring decisions beginning 12 years from June 7, 2019. At no point will the Agency documents be returned to the Employee's OPF or shared or discussed outside of the Agency.

**b.**     **NEUTRAL REFERENCE.** The Agency will provide a neutral employment reference for the Employee consisting only of dates of employment, salary, and position titles to an individual who calls (202) 712-1234.

**c.**     **DISABILITY RETIREMENT.** The Agency agrees to support and process the Employee's September/October 2019 disability retirement termination application in a timely manner, including providing necessary documentation. Agreed language for the Superior Officer's Statement (DS 5023) is attached to this agreement as Exhibit A and will be signed within three days of the effective date of this agreement. The Agency agrees to complete any future disability retirement forms (including those related to the application's appeal or reconsideration) required by the State Department, the Office of Personnel Management, other agencies, or others, in a manner affirming that the Employee was removed based on medical inability to perform.

The Employee is eligible to apply for health insurance through temporary continuation of coverage (TCC) if he complies with the instructions provided by USAID/HCTM. The Employee understands that the Agency is not responsible for the ultimate approval or denial of his disability retirement application.

If the USAID OCRD Director or the EEOC finds that the Agency violates this provision, the Employee retains the right (i) to apply for or accept any position at USAID under any hiring mechanism at any time, and (ii) to resume any claims, demands, complaints, or causes of action, which Employee has or may have, arising from the Employee's employment with USAID, including, but not limited to, allegations raised in OCRD-008-19-F.

**d.**     **HHE STORAGE.** The Agency agrees to store Employee's HHE, currently in shipment back to the United States Government storage facility in Hagerstown, Maryland, until March 9, 2020. Employee understands that the Agency is no longer responsible for the storage of his HHE after March 9, 2020.

**e.**     **LUMP SUM PAYMENTS.** The Agency agrees to pay $12,500 in attorney's fees, and $38,000 lump sum to the Employee's representatives, Passman & Kaplan, P.C. within 60 days of the effective date of the Agreement if he complies with the requirements in paragraph 3(g).

**f.**     **LUMP SUM IF DISABILITY RETIREMENT DENIED.** The Agency agrees to pay $7,500 in a lump sum to the Employee's representatives, Passman & Kaplan, P.C. within 60 days of Employee providing, and the Agency receiving, official documentation from the Department of State clearly demonstrating that his disability retirement

application has been denied by the Department of State and that all appeals of that decision, reconsiderations, or other avenues of redress, have been exhausted and unsuccessful. This documentation must be emailed to USAID attorney Sara Ryan and HCTM/ELR Director Nick Gottlieb. This provision only applies to the disability retirement application Employee is submitting in September/October 2019 and not any future retirement applications he may submit to a Federal Agency.

**5. EFFECT OF SIGNATURE.** By signing this Agreement, Employee agrees that Employee has read and understands the entire Agreement, the effect(s) of each provision, especially the provisions relating to the waiver of claims, thereby foreclosing further litigation on any matters relating to the employee's employment with USAID prior to the date of his signature on this Agreement, and the waivers set forth in Paragraph 3 above, and that Employee has signed this Agreement voluntarily and was in no way coerced.

**6.     TOTALLY OF AGREEMENT.** This Agreement constitutes a fair, full, and final resolution of all aspects of these allegations and contains all terms and conditions of the Agreement between the Parties. No other conditions or assurances, expressed or implied, are included.

**7.     BREACH.** If the Complainant believes that the Agency has failed to comply with the terms of this Agreement, the Complainant shall notify the Director, Office of Civil Rights and Diversity (OCRD), U.S. Agency for International Development, 1300 Pennsylvania Ave., NW, RRB 4.06B-126, Washington, DC 20523, in writing of the alleged noncompliance within 30 days of when the Complainant knew or should have known of the alleged noncompliance. Pursuant to 29 C.F.R. § 1614.504, if material noncompliance is established, the Complainant may request that the terms of this Agreement be specifically implemented or, alternatively, that the above-captioned complaint be reinstated for further processing from the point processing ceased and the Parties returned to status quo ante. Any review by the Director for OCRD, and any appeal to the Equal Employment Opportunity Commission (EEOC), or to any other body, shall be confined to the question of whether this Agreement has been implemented.

**8.     JOINT PRODUCT.** This Agreement is a joint product and will not be construed against any party on the grounds of sole authorship.

**9.     NON-ADMISSION.** The Agency and Employee have entered into this Agreement solely for the purposes of compromising disputed claims without protracted legal proceedings. Therefore, this Agreement is not intended as and shall not be deemed an admission by either party of the merit or lack of merit of the opposing party's claims and/or defenses. Without limiting the generality of the foregoing, this Agreement does not constitute and shall not be construed as an admission that the Agency violated any of the Employee's rights or any laws or regulations, or as an admission of any contested fact alleged by the Employee in connection with this matter.

**10.     NON-DISCLOSURE.** Employee and the Agency agree to keep the terms of this Agreement confidential. The terms of the Agreement may not be disclosed to any person or entity beyond the persons signing below, except that Employee may disclose such terms to his immediate family, counsel, and financial and/or tax advisors, as required by law, as necessary to

implement the terms of the Agreement, or as ordered by a court or administrative body of competent jurisdiction, including the FSGB, and the Agency may disclose such terms only to those with a need to know as necessary to implement the terms of the Agreement or as ordered by a court or administrative body of competent jurisdiction. Nothing in this Agreement shall limit the disclosure of any information by personnel of the Agency's Office of Inspector General or the Office of Security in the conduct of their official duties.

These provisions are consistent with and do not supersede, conflict with, or otherwise alter the employee obligations, rights, or liabilities created by existing statute or Executive order relating to (1) classified information, (2) communications to Congress, (3) the reporting to an Inspector General of a violation of any law, rule, or regulation, or mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety, or (4) any other whistleblower protection. The definitions, requirements, obligations, rights, sanctions and liabilities created by controlling Executive orders and statutory provisions are incorporated into this Agreement and are controlling.

**11.    NON-PRECEDENTIAL.** The Parties agree that this Agreement has no precedential effect. Neither the Agreement, nor any term(s) herein may be used as a basis, by any person or persons, to justify similar terms in any subsequent matter. This Agreement shall not be used, cited or relied upon by any party in connection with any other judicial or administrative procedure except if a Party alleges breach of this Agreement.

**12.    PRIVACY ACT.** This Agreement will be accorded all protection consistent with the Privacy Act, 5 U.S.C. § 552a.

**13.    EFFECTIVE DATE.** The Agreement becomes effective on the 7th day after the date he signs, or the date the last party signs, whichever is later.

**14.    OWBPA CONSIDERATION PERIOD.** Pursuant to the Older Workers Benefit Protection Act, the Employee agrees and understands that he waives the right to file a charge, complaint, grievance or lawsuit against the Agency under the Age Discrimination in Employment Act for any action arising from his employment relationship with the Agency through the effective date of the Agreement. The Employee also agrees and understands that he has the right:

> 1.    To 21 days from receipt of this Agreement to consider the terms, conditions, and requirements of this Agreement, and may choose to sign the Agreement at any time within the 21-day timeframe should he choose to do so;

> 2.    That Employee has been advised to consult with an attorney before signing the Agreement;

> 3.    That the Agreement is clearly written and the Employee understands and voluntarily accepts it;

4.     That within seven (7) days from his signature on this Agreement, Employee may revoke his acceptance of the Agreement by written notice to Nicholas Gottlieb, Director of Employee and Labor Relations, at ngottlieb@usaid.gov;

5.     Should Employee sign this Agreement before the twenty-one (21) day time period has expired, Employee attests that Employee's decision to accept such a shortening of this period is knowing and voluntary, and was not induced by the Agency through fraud, misrepresentation, and/or threat to withdraw or alter the terms of the Agreement.

**15.     ELECTRONIC SIGNATURES.** The Parties agree that any signatures affixed to the Agreement via photocopy, scanner or facsimiles are valid and enforceable as substitutes for original signatures.


_____Christopher Shephard (signed electronically)____September 27, 2019_____
Christopher Shephard                                                               Date
Employee


_____
Employee's attorney                                    9/30/2019
Johnathan P. Lloyd, Passman & Kaplan, PC (as to form only)     Date


_____    10/02/2019
Bob Leavitt                                             Date
Chief Human Capital Officer, HCTM

_____    10/7/19
Sara Ryan                                               Date
Attorney, GC/EA




                                                       Shephard Agreement 7



U.S. Department of State
Foreign Service Retirement Systems
## SUPERIOR OFFICER'S STATEMENT
IN CONNECTION WITH
APPLICATION FOR DISABILITY RETIREMENT

TO SUPERIOR OFFICER:

Under the Foreign Service Retirement Systems, the term disability means totally disabled for useful and efficient service by reason of disease or injury not due to vicious habits, intemperance, or willfulconduct on his or her part. Answer the following questions as completely as you can. Your objective and prompt completion of this statement is of utmost importance to the U.S. Government and the applicant.

| 1. Name of applicant for disability retirement (Last, First, MI) | 2. How long have you been the applicant's superior officer? |
|---|---|
| Shephard, Christopher R. | June 15, 2018 to May 20, 2019 |

3. Describe in detail the nature of the apparent disability and explain the manner, if any, in which it affects the performance of his or her official duties.

Mr. Shephard advised me that he suffers from ongoing arthritis and the affect of an assault he experienced in early 2018 which caused some cognitive and physical issues including headaches, memory problems, and fatigue. He has provided medical documentation and further advised me that chronic fatigue associated with his arthritis and his need to take breaks has been exacerbated since the assault even with the continuing use of weekly injections of his medicine. He also had a hard time concentrating, communicating clearly, and completing tasks quickly. Despite approved reasonable accommodations through our Office of Civil Rights and Diversity to allow for flexible work schedules and increased breaks he could not perform the essential functions of his job as a Backstop 60 Education Officer.

4.  As far as you know, has excessive use of alcohol or drugs ever interfered with applicant's performance of his or her duties? If so, please give details.

I do not have any reason to believe that he excessively used drugs or alcohol.

5.  Describe any instances of apparent emotional instability or irresponsible or erratic behavior on the part of the applicant.

I observed periodic crying from Mr. Shephard since his assault. He has not been irresponsible.

6.  Please state any other facts concerning the applicant's disability which you feel may be helpful to the medical officers in determining whether the applicant meets the eligibility requirements for retirement on account of total disability.

We tried reasonable accommodations since Mr. Shephard's assault as described in question three above and none of them enabled him to satisfactorily perform at the level expected for someone in his job position.

| Signature of Superior Officer | Title USAID \ Jordan Director, Education & Youth | Date (mm-dd-yyyy) 09-18-2019 |
| --- | --- | --- |
| Name of Agency USAID | Mailing Address of Agency Washington, DC | |

DS-5023   (Formerly JF-32a)